J-A11040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| ROY L. GALLOWAY, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER S. KYUNG | : | No. 1644 MDA 2023 |

Appeal from the Order Entered October 31, 2023
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2019-1163

BEFORE:  BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 9, 2024**

Roy L. Galloway, III (Father), appeals, *pro se*,[1] from the order awarding

(1) him and Jennifer S. Kyung (Mother) joint legal custody of their minor son,

R. (Child); and (2) Mother primary physical custody, subject to Father's

periods of partial physical custody.  Father challenges the trial court's denial

of his petition for modification of custody, and emergency petition for special

relief, as being contrary to Child's best interests.  After careful review, we

affirm in part, reverse in part, and remand for further proceedings consistent

with this memorandum.

Father instituted his initial custody action in February 2019, shortly after

Child's birth.  Mother filed an answer and counterclaim.  Considerable litigation

---

[1] Father is a licensed Pennsylvania attorney.

ensued thereafter. After the parties participated in an unsuccessful custody conciliation conference in March 2019, the matter proceeded to custody hearings in July and September 2019.

On September 23, 2019, the trial court entered a final order (Original Custody Order) that awarded the parties joint legal custody of Child, and awarded Mother primary physical custody, subject to Father's periods of partial physical custody. ***See*** Original Custody Order, 9/23/19, at 2-6.[2] Relevant to the instant appeal, the Original Custody Order contained the following provision:

11. Illegal Drugs, Tobacco and Alcohol:

a. The parents shall not possess or use any illegal controlled substances, nor shall they consume alcoholic beverages to the point of intoxication within 12 hours prior to or during periods of physical custodial responsibilities….

---

[2] The trial court emphasized in its Original Custody Order,

[t]he most salient finding is that the parties have a serious problem with their level of conflict and willingness to cooperate. Their communication is strained, at best…. [The trial court is] heartened by the fact that [the parties] have at least agreed on a co-parenting counselor. … At some point it may be appropriate to implement a schedule that is closer to 50/50 [physical custody]. But until the parties show progress in co-parenting, an equally shared schedule is not tenable.

Original Custody Order, 9/23/19, at 1-2; ***see also id.*** at 9 (directing the parties to enroll in co-parenting counseling). The trial court concluded it was in Child's best interests to award Mother primary physical custody, as she "has provided the bulk of the parenting duties and is in the best position to provide the love, nurture and stability at this stage in the [C]hild's life." ***Id.*** at 2.

*Id.* at 8, ¶ 11.

Over three years elapsed with no further litigation between the parties. It is undisputed that Mother exercised primary physical custody of Child throughout this period.

On June 2, 2023, Father filed a petition for modification of custody (modification petition).[3] Father sought an award of joint legal custody and primary physical custody of Child. Modification Petition, 6/2/23, ¶ 4. According to Father, Child's best interests are served by Father having primary physical custody in light of several factors, including (1) Father's substantial involvement in Child's care and life; (2) bullying Child has endured at his day care provider, "U-GRO" (current day care); (3) the stable and nurturing home Father provides Child; and (4) Mother's purported use of marijuana while Child is in her custody, in violation of the Original Custody Order. *Id.* ¶ 5(a)-(b), (e), (h); *see also* Original Custody Order, 9/23/19, ¶ 11.

Father maintained that because of bullying at the current day care, the parties toured an alternate childcare provider, Harrisburg Academy. Modification Petition, 6/2/23, ¶ 5(f). According to Father, "Mother expressed that she was impressed with [Harrisburg Academy] and wished to send" Child

---

[3] Pursuant to Section 5328 of the Child Custody Act, "[u]pon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a); *see also J.P. v. J.S.*, 214 A.3d 1284, 1290 (Pa. Super. 2019) ("Petitions for modification of custody orders may be entertained at any time without regard to whether there have been any material changes which would warrant a reevaluation." (citation omitted)).

there. *Id.* Further, "Father offered to pay 100% of the additional costs of the school, but Mother ended up refusing to consent…." *Id.*

> Finally, Father maintained that the Original Custody Order
>
> is no longer feasible because it was adopted when [] Child was less than 1 year[] old and the parents immediately modified the order following its adoption, but Mother has recently expressed that she would be taking the additional [physical custody] time that Father has had with [] Child for all his life away[.]

*Id.* ¶ 5(d) (capitalization modified); *see also id.* ¶ 5(j) (alleging, "Mother has commented that she has primary physical custody, so she can do whatever she wants" with Child).

Contemporaneously with his modification petition, Father filed an emergency petition for special relief (emergency petition), seeking a court order to compel Mother to submit to a hair follicle drug test. Emergency Petition, 6/2/23, ¶ 9. According to Father, he

> appeared at Mother's home on at least four occasions recently [for custody exchanges,] and smelled the odor of marijuana emanating from Mother's home during periods of time where she [wa]s caring for [] Child and transporting [] Child. Father has serious concerns about Mother transporting [] Child and caring for [] Child while she may be in an impaired state. Paragraph 11 of the [Original] Custody O[r]der states that "The parents shall not possess or use any illegal controlled substances, nor shall they consume alcoholic beverages to the point of intoxication within 12 hours prior to or during periods of physical custodial responsibilities…." [Original Custody Order, 9/23/19, ¶ 11.]

*Id.* ¶¶ 5-7 (formatting and capitalization modified; paragraph numbering omitted); *see also* Modification Petition, 6/2/23, ¶ 5(h) (alleging Mother's marijuana use).

- 4 -

On June 6, 2023, Mother filed a response denying Father's claims of her marijuana use. *See* Response, 6/6/23, ¶¶ 5-6, 8-9 (Mother alleging, during all custody exchanges, Father "only drops [] Child off, and picks [] Child up, from the street curb at or in his car and said curb is several feet away from [] Mother's residence," and thus, it was impossible for Father to detect any odors from Mother's residence (capitalization modified)). According to Mother, the "emergency petition is Father's unsubstantiated attempt to bolster his request for modification of [the Original] Custody Order with absolutely no proof and to unduly harass" Mother. *Id.* ¶ 8 (capitalization modified). Mother further claimed that since the entry of the Original Custody Order in 2019, "the parties' circumstances … have neither materially nor substantially changed to warrant a modification of that Order." *Id.* ¶ 4.

On June 7, 2023, the trial court denied Father's emergency petition without prejudice. *See* Order, 6/7/23 (directing the parties to address Father's allegations of Mother's drug use at a scheduled custody conciliation). The custody conciliation conference occurred on July 6, 2023, via Zoom. Mother and Father participated with their respective counsel.

The custody conciliator filed a report on July 6, 2023 (Conciliation Report), finding that Father and Mother "were unable to reach an agreement; therefore, a hearing will be necessary." Conciliation Report, 7/6/23, ¶ 4; *but see id.* ¶ 8 (stating Father and Mother have "agreed to go to co-parenting counseling. They also agreed to increase [] Father's [physical custody] time

beyond the schedule in the [Original Custody] Order since that is what they have done for some time.").  The Conciliation Report further stated as follows with respect to Father's emergency petition:

> During the conciliation, [] Father reiterated his request that [] Mother [perform] a hair follicle test for which he would pay - in addition to reimbursing her for any lost wages.  …  [] Mother denies using marijuana during her custodial periods.  On advice of her counsel, [] Mother declined to take a hair follicle test.  [] Mother believes [Father's] request is a "fishing expedition" without basis in fact.

*Id.* ¶ 7 (formatting modified).[4]

Mother filed a response to Father's modification petition on October 30, 2023.  Mother claimed it was not in Child's best interests to disturb the Original Custody Order and status quo in place since 2019.  Response, 10/30/23, ¶¶ 5-6 (Mother stating the Original Custody Order "has been working well[,] as [the parties] are actively co-parenting pursuant to it and it is not in the best interests of the [C]hild to change it.").

The matter proceeded to a hearing on Father's modification petition and emergency petition on October 31, 2023 (modification hearing).  Father and Mother appeared, with their respective counsel,[5] as the only witnesses.

---

[4] The custody conciliator issued no findings with respect to Father's allegation of Mother's drug use.

[5] Father filed a petition to withdraw his counsel's appearance the day after the modification hearing; Father has proceeded *pro se* since that time.

Father testified he resides with his wife (Stepmother) and Child[6] in a four-bedroom home in a safe community in Harrisburg, wherein Child has his own room and bathroom. N.T., 10/31/23, at 4-5. Stepmother has been involved with Child for nearly his entire life. *Id.* at 7. According to Father, Stepmother and Child "have a pretty strong bond." *Id.* Father explained that pursuant to the Original Custody Order, he has alternating weekend physical custody of Child, from Thursday to Saturday. *Id.* at 13; *see also id.* at 8 (Father stating the parties also mutually agreed to a modification of the Original Custody Order, to allow Father to have physical custody of Child every other Monday night).

Father testified that he filed the modification petition because the Original Custody Order "just didn't fit…" and "didn't give [Father] enough time" with Child N.T., 10/31/23, at 8, 9. Father further alleged Mother had failed to adequately communicate with him about Child's medical appointments and school functions, in violation of the terms of the Original Custody Order. *Id.* at 30.

Father explained his reason for filing the emergency petition: "On several occasions[,] I smelled the odor of marijuana during custody exchanges" emanating from Mother's residence. *Id.* at 12. Father alleged,

---

[6] Father stated he also has an adult daughter from a prior relationship; she does not reside with Father. N.T., 10/31/23, at 4-5.

on one occasion, Mother "proceeded to put [Child] in a car seat [in Mother's vehicle] and transported him after I smelled the marijuana." *Id.*

With respect to the matter of Child's schooling, Father testified as follows:

> I wanted to enroll [Child] in Harrisburg Academy. I had talked to Mo[ther] about it because there was a lot of bullying going on in [Child's current day care.[7]]
>
> * * *
>
> I want to maximize [the] education that [Child] gets. The [current] day care is a good environment, but I think he could benefit from more education, and I think he would get that at Harrisburg Academy. I offered Mo[ther] to pay for it one hundred percent. Mo[ther] told me after we toured the school she liked it.

*Id.* at 14-15 (footnote added; formatting modified); *see also id.* at 16-18 (Father detailing the distance of Harrisburg Academy from the parties' respective residences, and its curriculum and hours).

On cross-examination, Father stated he disagreed with Mother's counsel's characterization that "there really hasn't been a significant change since the Original Custody Order[.]" *Id.* at 24 (capitalization modified). Finally, Father explained the relief he sought as follows:

> Ideally[,] I would like to share fifty[-]fifty [physical custody], at least, but today I would like primary physical custody until Mo[ther] satisfies that there's not an issue with drugs. I would like her to take a hair follicle test....

---

[7] Father testified that the bullying of Child occurred "at least twenty times. It was pretty bad." N.T., 10/31/23, at 18.

*Id.* at 14.

Mother testified she resides in a home in Mechanicsburg with Child, his 11-year-old step-sister, and 9-year-old step-brother. *Id.* at 39, 41, 50. Mother stated Child has a close relationship with his step-siblings, and they engage in many activities together. *Id.* at 50.

According to Mother,

[a]ny time that [Father] asks for extra [physical custody] time, … I always oblige. … And to be honest, [Child] loves being with his Dad, but when [Father] comes to pick [Child] up [to exercise Father's] extra time, [Child] wants to be sure that he'll be back [at Mother's residence] that night.

*Id.* at 42-43; *see also id.* at 42 (Mother opining that Father's schedule is "not as flexible as he claims [it] to be"). Further, Mother disputed Father's claim that she fails to adequately communicate with him about Child's schooling and medical appointments. *Id.* at 40.

The following exchange occurred between the trial court and Mother with respect to Child's schooling:

THE COURT: … The agreement on the Harrisburg Academy, I understand that you don't object to your son going there?

[MOTHER]: Absolutely not, Your Honor.

THE COURT: And you're willing to pay the nine hundred dollars a month -- not to exceed nine hundred dollars a month tuition?

[MOTHER]: Correct, Your Honor. Yes.

THE COURT: As long as [Appellant] pays the balance?

[MOTHER]: … That was the main thing….

- 9 -

*Id.* at 40-41. Nevertheless, Mother emphasized she also wanted to retain the possibility of sending Child to the same public school as his step-siblings, when Child reaches school age. *Id.* at 41.

With respect to Father's emergency petition and his allegation of Mother's marijuana use, the trial court questioned Mother as follows:

> THE COURT: Let's get back to the marijuana. [Father has] concerns that you're using marijuana when you're driving your [C]hild.
>
> [Mother]: So I would just like to say I don't believe that any of those concerns are valid. [Father] never -- prior to [Father's] filing [the emergency petition], he never mentioned anything. He never said he smelled anything. He never, you know, showed any concern about me operating [a motor vehicle].
>
> I just feel like it's completely baseless. The first time I ever heard about marijuana was when he filed the emergency petition, which I feel was retaliatory….
>
> THE COURT: You're telling me you don't use marijuana?
>
> [Mother]: No.
>
> THE COURT: No, you don't use it or no, you're not telling me that?
>
> [Mother]: No, I'm not telling you that. I'm telling you that when [Father] brought up the marijuana, no, I was not using it. I felt like it was completely baseless when he brought up the marijuana accusation.

*Id.* at 46-47.

Finally, Mother opined that it was in Child's best interests to deny Father's modification petition. *Id.* at 51. Mother elaborated,

> I think the [the current custody arrangement] is great. I mean [Child] is thriving. He is happy. He is joyful. He loves his Dad. He loves his [S]tep[mother]. … He loves his family, but I

- 10 -

think he enjoys the primary residence. He loves his [step-]siblings.

We live in a very child-friendly neighborhood. He has cousins right up the street, … and they will ride bikes outside. I mean it's a very tight-knit community, and [Child] just has a lot of friends. He really likes where he's at.

I just think that [Child] being at his Father's house even fifty[-]fifty would disrupt that immensely, and [Child] wouldn't have those same built-in features that he has at my place.

*Id.* at 52.

After the close of testimony, the trial court addressed in turn each of

the 23 Pa.C.S.A. § 5328(a) custody factors,[8] as they pertained to Child's best

---

[8] In making any custody determination, including a modification of a custody order, a trial court must consider all of the factors (custody factors) enumerated in Section 5328(a) as follows:

(a) *Factors*. — In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

*(Footnote Continued Next Page)*

- 11 -

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, education and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*(Footnote Continued Next Page)*

interests. N.T., 10/31/23, at 57-60; *see also* Trial Court Opinion, 1/9/24, at 6, n.14 (stating that, at "the close of testimony, we recessed for 1½ hours so that we could review the [parties'] exhibits and consider the custody factors before making our decision."). The court found that most of the custody factors were either "not a factor" or "favor[ed] neither" party. *See*, *e.g.*, *id.* at 58-60. However, with respect to the custody factors at Section 5328(a)(5) (availability of extended family) and (a)(6) (sibling relationships), the trial court found that these factors favored Mother. *Id.* at 59. With respect to the custody factor concerning drug and alcohol use (Section 5328(a)(14)), the trial court found that it "didn't hear any history of drug and alcohol abuse. We heard [Father's claim that he previously detected at Mother's residence] the smell of marijuana. We are satisfied that it is not a factor." *Id.* at 60.

The trial court issued its custody order (Custody Order) on the record at the close of the modification hearing. *See id.* at 60-64; *see also id.* at 60 (stating that all prior custody orders are withdrawn). With respect to Child's schooling, the Custody Order contained the following provision:

> 6. School: Unless otherwise agreed by the parties or ordered by [the trial] court, [] Child shall attend Harrisburg Academy through kindergarten. … Mother shall be responsible for the monthly payments up to $900.00. Any required lump sum payments and all other costs are to be borne by Father. **Provided, however, that if Father moves for a reduction in child support, he shall bear all costs for [] Child's attendance at Harrisburg Academy.**

---

23 Pa.C.S.A. § 5328(a). "All of the [custody] factors … are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted).

*Id.* at 62 (emphasis added; capitalization modified) (hereinafter, "Paragraph 6").

The Custody Order addressed the matter of drug and alcohol use as follows:

7. Illegal drugs, tobacco, and alcohol: Neither party shall use or possess illegal drugs nor consume alcohol to the point of intoxication within twelve hours prior [to] or during periods of physical custody[,] nor may tobacco be smoked by anyone inside the residence or a vehicle while the child is present.

Either party may request the other submit to a drug test at the expense of the requesting party. The request shall be in writing and the drug test shall be performed within 48 hours of receiving notice of the request. The requesting party shall reimburse the testing party for all costs incurred[,] including lost work. Only one such request shall be made by each party absent further order of court.

*Id.* at 63. Finally, the Custody Order "encouraged [the parties] to participate in co-parent counseling." *Id.* at 64.

On November 6, 2023, Father filed a request for transcripts (transcripts request). Father timely filed a *pro se* notice of appeal from the Custody Order on November 30, 2023.[9]

---

[9] The caption of the notice of appeal indicated this is a Children's Fast Track case. Notice of Appeal, 11/30/23; ***see also J.M.R. v. J.M.***, 1 A.3d 902, 906 (Pa. Super. 2010) (applying Children's Fast Track procedure to appeal from a trial court order modifying child custody). We additionally note that the trial court did not docket the Custody Order, and provide the parties notice of it, until November 6, 2023.

Notably, Father did not contemporaneously file with his notice of appeal a concise statement of errors, as required by Pa.R.A.P. 1925(a)(2)(i) (mandating that in children's fast track appeals, the "concise statement of errors complained of on appeal **shall** be filed and served **with** the notice of appeal." (emphasis added)); **see also** Pa.R.A.P. 905(a)(2) (governing notices of appeal and providing, "[i]f the appeal is a children's fast track appeal, a concise statement of errors complained of on appeal as described in Pa.R.A.P. 1925(a)(2) shall be filed with the notice of appeal and served on the trial judge…."); **In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding "the failure of an appellant in a children's fast track case to file contemporaneously a concise statement with the notice of appeal pursuant to [R]ules 905(a)(2) and 1925(a)(2), will result in a defective notice of appeal. The disposition of the defective notice of appeal will then be decided on a case by case basis….").

Father contemporaneously filed with his notice of appeal a "Motion to Extend Time to File a Concise Statement" (motion to extend). Father conceded his non-compliance with Rules 905(a)(2) and 1925(a)(2)(i). Motion to Extend, 11/30/23, ¶ 6. However, Father explained he (1) had received no response to his transcript request; and (2) "is concerned about waiving issues on appeal that [are] not included in [Father's Rule 1925] statement of errors, and therefore is seeking an order of court permitting Father to file a

supplemental statement of errors complained of on appeal after he receives

the transcripts."[10]  *Id.* ¶¶ 4, 8-10 (capitalization modified).

On December 4, 2023, the trial court denied Father's motion to extend,

reasoning as follows:

> Pa.R.A.P. 905 is clear.  [Father] has not cited any authority that allows us to ignore or modify it.  *See also*[] Pa.R.A.P. 1925(a)(2)(i).

Order, 12/4/23 n.1.

On December 13, 2023, Father filed a *pro se* Rule 1925 concise

statement, despite the trial court's denial of the motion to extend.  The trial

court filed a Rule 1925(a) opinion on January 9, 2024.

Father presents four issues for our review:

A. Did the trial court abuse its discretion by failing to grant Father's Motion to Extend the Deadline to File a Statement of Errors Complained of On Appeal where Father requested and paid for the transcripts three weeks before the deadline to file a Notice of Appeal, but the court reporter did not produce the transcripts until after the deadline to file a Notice of Appeal?

B. Did the trial court abuse its discretion and deny Father due process by making a child support ruling during the custody trial without providing proper notice to Father and without consideration to the parties' incomes or the fact that Father was already contributing to the Child's schooling through [the] support order?

C. Did the trial court err and abuse its discretion by ignoring Father's concerns about Mother abusing marijuana while the Child was in her custody and transporting the Child in a vehicle while under the influence of marijuana?

---

[10] Father states in his brief that "on December 4, 2023, … the court reporter emailed a copy of the transcripts to [F]ather."  Father's Brief at 15.

D. Did the trial court abuse its discretion and deprive Father of due process by conducting the trial in an unfair manner and not allowing sufficient opportunity to develop a record that addresses the custody factors?

Father's Brief at 4-5 (capitalization modified).

Father first challenges the trial court's denial of his motion to extend the filing deadline for his Pa.R.A.P. 1925 concise statement, and its determination that Father waived all issues for his noncompliance with Rules 905(a) and 1925(a)(2)(i), *supra*. **Id.** at 14. Father emphasizes that he did not receive a response to his transcripts request until after filing his notice of appeal, and that he subsequently filed a concise statement. **Id.** at 14-15. Father cites Pa.R.A.P. 1925(b)(2)(ii), which provides:

(2) Time for filing and service.

* * *

(ii) **If a party has ordered but not received a transcript necessary to develop the Statement, that party may request an extension of the deadline to file the Statement** until [twenty-one] days following the date of entry on the docket of the transcript in accordance with Pa.R.A.P. 1922(b). The party must attach the transcript purchase order to the motion for the extension. If the motion is filed at least five days before the Statement is due but the trial court does not rule on the motion prior to the original due date, the motion will be deemed to have been granted.

**Id.** (emphasis added); **see also** Father's Brief at 15. According to Father, the trial court's denial of his motion to extend "is unreasonable and cannot be justified." **Id.** at 17. We agree.

The trial court, in its Rule 1925(a) opinion, recommended that this Court

find Father waived all of his issues, reasoning as follows:

> [Father] did not contemporaneously file and serve a concise statement of errors complained of on appeal, as required under the Rules of Appellate Procedure. **See** Pa.R.A.P. 905(a)(2), and 1925(a)(2)(i). However, he did contemporaneously file a motion to extend his concise statement filing deadline. **He failed to provide, nor could** [**the trial court**] **find, any authority which would allow** [**the court**] **to extend th**[**e filing**] **deadline in a children's fast track appeal**. Therefore, [the trial court] denied his request. On December 13, 2023, Father filed what he labeled a "Concise Statement of Matters Complained of on Appeal[,]" which was anything but concise. It consisted of 12 rambling pages. While it contained 4 numbered paragraphs, each went on for several pages. It was extremely difficult to succinctly discern what Father's issues were from its contents. Therefore, his issues should be considered waived. **See S.S. v. T.J.**, 212 A.3d 1026 (Pa. Super. 2019); Pa.R.A.P. 1925.

Trial Court Opinion, 1/9/24, at 1-2 (footnote omitted; emphasis added).[11]

Despite the trial court's recommendation that we find Father's issues waived,

it nevertheless addressed the issues "to the extent that they can be

discerned…." **Id.** at 2.

In **In re K.T.E.L.**, 983 A.2d 745, this Court recognized that the failure

to file a concise statement contemporaneously with the notice of appeal

constitutes "a defective notice of appeal," and we dispose of such matters on

a case-by-case basis pursuant to **Stout v. Universal Underwriters Ins. Co.**,

421 A.2d 1047 (Pa. 1980). **K.T.E.L.**, 983 A.2d at 747.

---

[11] Mother likewise asks this Court to find Father waived all issues based on his non-compliance with Rules 905(a) and 1925(a)(2)(i). **See** Mother's Brief at 14-16 (unpaginated).

In **Stout**, our Supreme Court held that

> [t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the party [moving for quashal of the appeal] has suffered no prejudice.

**Stout**, 421 A.2d at 1049; **see also id.** ("The Rules of Appellate Procedure were adopted to insure the orderly and efficient administration of justice at the appellate level. They were not intended, however, to be so rigidly applied as to result in manifest injustice, particularly when there has been substantial compliance and no prejudice.").

Upon careful consideration, we conclude the trial court erred in denying Father's motion to extend and deeming all his issues waived. As discussed above, Father took all appropriate actions required by Rule 1925(b)(2)(ii). Unlike the trial court, we do not believe that this provision is inapplicable merely because it is not found within the subsection of Rule 1925 relating to children's fast track appeals. Nor do we conclude that the mandatory language the general assembly included in Rule 1925(a)(2)(i) precludes a court from granting extensions in children's fast track appeals as a matter of law. Father should not be punished for following this procedure simply because this is designated a children's fast track case, when he timely filed his transcripts request and substantially complied with our appellate rules. **See Stout**, 421 A.2d at 1049 (emphasizing that the "extreme action of dismissal" is "inappropriate when there has been substantial compliance with

the rules and when the party [moving for quashal of the appeal] has suffered no prejudice."); *see also Velasquez v. Miranda*, 297 A.3d 837, 841 (Pa. Super. 2023) (applying *Stout* in children's fast track case)

In addressing Father's remaining issues, we observe that "[o]ur standard of review over a custody order is for a gross abuse of discretion." *Rogowski v. Kirven*, 291 A.3d 50, 60 (Pa. Super. 2023) (citation omitted); *see also Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (emphasizing the "discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." (citation omitted)); *Myers v. DiDomenico*, 657 A.2d 956, 957 (Pa. Super. 1995) (only where an appellate court finds that a "custody order is manifestly unreasonable as shown by the evidence of record" will it "interfere with the trial court's determination." (citation and quotation marks omitted)). An abuse of discretion "will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record." *Kirven*, 291 A.3d at 60 (citation omitted).

"In reviewing a custody order our scope of review is of the broadest type…." *V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citation omitted).

Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

*S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (internal citations omitted); *see also Andrews v. Andrews*, 601 A.2d 352, 353 (Pa. Super. 1991) (stating where a custody matter presents an issue implicating "credibility and weight of the evidence, we defer to the findings of the trial judge, who had the opportunity to observe the proceedings and the demeanor of the witnesses." (citation omitted)).

This Court has further explained that

[u]ltimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

However,

[t]he parties cannot dictate the amount of weight the trial court places on evidence. … Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion. The test is whether the evidence of record supports the trial court's conclusions.

*R.M.G. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (citation omitted).

In any custody case, the paramount concern is the best interests of the child. *See M.G. v. L.D.*, 155 A.3d 1083, 1091 (Pa. Super. 2017); 23 Pa.C.S.A. §§ 5328(a), 5338(a). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted); *see also J.M.R. v. J.M.*, 1 A.3d 902, 911 (Pa. Super. 2010) ("In evaluating whether a modification of custody is in a child's best interest, the court has an obligation to consider all relevant factors that could affect the child's well-being." (citation omitted)). We are mindful that "[p]rior to the formation of a custodial order, the parents stand on equal footing and the only burden carried by either of them is to establish what is in the best interest of the child." *J.R.M.*, 33 A.3d at 650 (citation and brackets omitted); *see also* 23 Pa.C.S.A. § 5327(a) ("In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent.").

In his second issue, Father claims the trial court erred and violated his due process rights, where it effectively made an improper child support ruling during a custody modification hearing (*i.e.*, by adjusting the amount the parties pay for Child's school tuition). *See* Father's Brief at 17-22. Father challenges the trial court's finding that he agreed to pay 100% of Child's $20,000 per year tuition to Harrisburg Academy, as it is unsupported by the

evidence of record. *Id.* at 17 (claiming the court's finding "is completely belied by the record in this case."). Father contends that at the modification hearing,

> when asked how [Harrisburg Academy] would be paid for, Father stated that he would be willing to pay **100% of the difference in costs** between [Child's current] day care and Harrisburg Academy[,] without Mother contributing anything more than the $287/week she was already paying for the [current] day care….

*Id.* (emphasis added; some capitalization modified).

> Mother counters that the trial court
>
> neither abused its discretion nor violated Father's right to due process by making a child support ruling during a custody trial[,] when Father[] raised the issue of child support and his willingness to pay an amount significantly higher than what the court found, based upon the testimony of the parties, to be a fair amount for what both parties agreed to be in the best interests of [] Child to attend a private school that was more expensive than the current day care where [] Child was enrolled.

Mother's Brief at 17 (unpaginated) (capitalization modified). According to Mother, at the modification hearing, Father "testified to being in agreement with paying one hundred percent of the Child's tuition if the Child were to attend the school chosen by Father[], in addition to whatever child support [Father] was paying." *Id.* at 18.

Father's claim of a procedural due process violation presents "a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted); *see also id.* ("In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child.").

- 23 -

Instantly, a review of the evidence presented at the modification hearing is necessary. Father testified several times about his agreement with Mother to pay for Child's attendance at Harrisburg Academy. Initially, on direct examination, Father indicated he was willing to pay the entire amount of the tuition:

Q [Father's counsel:] Are you still in agreement with paying [one] hundred percent of the [C]hild's tuition if he were to attend [Harrisburg Academy]?

A [Father:] Absolutely, in addition to whatever child support I'm paying now, which is almost fifteen hundred [dollars] per month.

N.T., 10/31/23, at 17-18.

However, Father subsequently clarified the parties' agreement with respect to Harrisburg Academy and funding its tuition. Specifically, **Father testified he was willing to pay the full tuition cost that *exceeded* Child's current day care cost**. ***See id.*** at 33-34. The following exchange occurred on cross-examination of Father:

Q [Mother's counsel:] [Father], did you offer to pay an eight thousand dollar deposit for [Child's] admission and tuition [to Harrisburg Academy]…[?] [A]nd then **monthly payments [Mother] would be making in the amount of about nine hundred dollars a month**?[12]

A [Father:] Okay. The way it works now is I pay [Mother child] support, and the support part of [Child's] tuition is factored into it. So[,] when I [proposed] the idea of Harrisburg Academy, I understand that [the school costs] several thousand dollars more [than Child's current day care], so **I offered to pay *one hundred***

_____

[12] We hereinafter refer to the bolded portion of Mother's counsel's question as "the hypothetical $900 amount."

***percent of the additional*** [***cost***] **that Harrisburg Academy would be**….

Q[:] Let me just make sure we're clear.

THE COURT: Let him finish, please.

A[:] So if [Child's day care costs] twelve thousand [dollars,] and [Harrisburg Academy costs] twenty thousand, I offered to pay eight thousand cash straight to [Harrisburg Academy], and [Mother] could continue paying what she was paying out of the [child] support to Harrisburg Academy, so [**one**] **hundred percent of the *extra costs* would have been on me**….

THE COURT: … [Y]ou're talking about what [Mother] was paying for day care would go to Harrisburg Academy?

A[:] Exactly.

THE COURT: I understand.  Move on.

***Id.*** (emphasis and footnote added).

At the modification hearing, the trial court admitted documentary evidence from both parties, but opted to review those documents *in camera*, as opposed to permitting the parties to inquire about the documents on the record.  ***See***, ***e.g.***, ***id.*** at 33 (admitting exhibit), and ***id.*** at 34 (trial court stating to Father's counsel, "I will read [the exhibit].  It speaks for itself.").  Importantly, Mother introduced as an exhibit (Exhibit 3) a payment ledger generated by the current day care, which showed Mother's weekly payments from March 2021 through October 2023.  ***See id.*** at 49 (admitting Exhibit 3).  Mother testified that she "pa[id] the current day care [$]1,443 for the month of October and prior months back to January of 2023[.]"  ***Id.***; ***see also generally*** Exhibit 3.  Mother confirmed "this is the amount or approximately

the amount that [she] would be able to use to help pay for Harrisburg Academy[.]" *Id.*

However, as discussed above, earlier in the modification hearing, Mother's counsel proposed the hypothetical $900 amount, with respect to how much Mother would pay toward Child's Harrisburg Academy tuition. *See id.* at 33 (counsel asking Father if, in the event Father made the proposed deposit to Harrisburg Academy, Mother would then make monthly payments of $900). The trial court appeared to adopt the hypothetical $900 amount, despite its inconsistency with Mother's (1) foregoing testimony; and (2) current monthly day care expenditures, identified in Exhibit 3 (showing monthly payments exceeding $900). *See id.* at 41 (trial court asking Mother whether she was "willing to pay the nine hundred dollars a month – not to exceed nine hundred dollars a month tuition[,]" pursuant to the parties' proposed agreement regarding Harrisburg Academy); *see also id.* (Mother responding in the affirmative).

The trial court repeated its mischaracterization of the parties' agreement, and its reliance on the hypothetical $900 amount, in Paragraph 6 of the Custody Order:

> 6. School: Unless otherwise agreed by the parties or ordered by this Court, the Child shall attend Harrisburg Academy through kindergarten. If the parties agree, he may be enrolled immediately, but in no event shall he be enrolled later than the beginning of the term in January 2024. **Mother shall be responsible for the monthly payments up to $900.00.** Any required lump sum payments and all other costs are to be borne by Father. Provided, however, that if Father moves for a reduction

in child support, he shall bear all costs for the Child's attendance at Harrisburg Academy.  In the alternative, Mother may withdraw the Child and enroll him in public school and/or the day care of her choice.

Order, 10/31/23, at ¶ 6 (emphasis added; some capitalization modified).

The trial court's Rule 1925(a) opinion contained the same flaw:

Despite **Father's willingness to pay for all costs at Harrisburg Academy,** [the trial court] actually directed Mother to pay $900 per month toward the Child's tuition.  This was based upon **Mother's testimony that she was willing to pay the $900 per month, which was roughly equal to the Child's** [**current**] **day care expense** that would no longer be necessary if [Child] attended the private school.  Since we could not enter a support order in the custody case, we merely made Mother's $900 monthly contribution contingent upon Father's articulated promise not to reduce his current child support obligation.  The order actually required [Father] to pay $900 per month less than he testified he was willing to pay.  We do not understand [Father's] objection.

Trial Court Opinion, 1/9/24, at 4 (emphasis added).

As stated above, a review of Father's complete testimony makes clear that he agreed to pay the full tuition cost of Harrisburg Academy that **exceeded** Child's current day care cost (*i.e.*, this arrangement would, in effect, maintain the status quo as to the amount Mother paid toward Child's schooling).  Father repeatedly testified: "I offered to pay one hundred percent of the **additional** [**cost**] that Harrisburg Academy would be"; and "[one] hundred percent of the **extra costs** would have been on me[.]"  N.T., 10/31/23, at 34 (emphasis added).  Moreover, contrary to the hypothetical $900 amount, Mother confirmed (1) she pays the current daycare **more** than

- 27 -

$900 per month;[13] and (2) "this is the amount or approximately the amount that [she] would be able to use to help pay for Harrisburg Academy[.]" *Id.* at 49.

Based on the foregoing, we agree with Father[14] that the trial court abused its discretion in including a provision in the Custody Order (Paragraph 6) that is unsupported by the record. We thus vacate Paragraph 6, and remand the matter to the trial court for further proceedings. On remand, the court is instructed to fully consider all the evidence, resolve any conflicts therein, and determine the respective amounts the parties must pay as to Child's schooling/Harrisburg Academy.

In his third issue, Father claims the trial court improperly denied his emergency petition and "abused its discretion by ignoring Father's concerns about Mother's [m]arijuana use" during her periods of physical custody. Father's Brief at 23. Father challenges the trial court's "finding that drug use

---

[13] There are conflicts in the record as to the actual amount Mother pays the current day care. **Compare** N.T., 10/31/23, at 49 (Mother confirming she "pa[id] the current day care [$]1,443 for the month of October and prior months back to January of 2023"), **with** Exhibit 3 **generally** (indicating Mother paid the current day care $287.00 per week, or approximately $1,148 per month, assuming a four-week month).

[14] Contrary to Father, we view the issue as an abuse of the trial court's discretion, as opposed to the court's violation of his procedural due process rights. **See In re A.N.P.**, 155 A.3d 55, 66 (Pa. Super. 2017) ("Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." (citation omitted)).

was not a factor despite Mother's admission." *Id.* at 25; *see also id.* at 26 (asserting, "Mother never denied using drugs in her answer" to Father's emergency petition). Father repeatedly emphasizes that Mother declined, upon the advice of her counsel, to perform a drug test at Father's sole expense. *See id.* at 24-27.

Mother counters the trial court properly denied Father's emergency petition. Mother's Brief at 20-21 (unpaginated). Mother claims the trial court "had the ability to observe the testimony and demeanor of the witnesses and made its determination regarding credibility." *Id.* at 20. Mother points out she "testified under oath to not abusing marijuana" at the modification hearing, and that Father never claimed he smelled marijuana at Mother's residence until filing his emergency petition. *Id.* Mother asserts Father raised this baseless allegation "to bolster his claim for custody." *Id.* at 21.

The trial court stated, in its Rule 1925(a) opinion, it

> **did not ignore Father's concerns about Mother's alleged abuse of marijuana. We specifically addressed it on the record** [**at the modification hearing**] **as part of our consideration of the custody factors**. Furthermore, we specifically addressed the issue with Mother as evidenced by the following exchange:
>
> > THE COURT: Let's get back to the marijuana. [Father has] concerns that [Mother is] using marijuana when [she is] driving [] Child.
> >
> > [Mother]: So I would just like to say I don't believe that any of those concerns are valid. ... [P]rior to [Father's] filing [the emergency petition], he never mentioned anything. He never said he smelled anything. He never … showed any concern about me operating [a motor

vehicle]. … The first time I ever heard about marijuana was when he filed the emergency petition, which I feel was retaliatory….

N.T., 10/31/23, at 46:9-19. Finally, [**the trial court**] **believed** [**Mother's**] **testimony when she said she did not use marijuana**.

As for Mother's refusal to submit to Father's request for drug testing, [the trial court's June 7, 2023, order denying Father's emergency petition without prejudice] stated that "if Mother did not agree to testing" it should be brought to [the court's] attention at the custody trial. **It was.** [Mother's] refusal to agree to Father's request for drug testing was based upon the advice of [Mother's] counsel. Furthermore, while we believed Mother's testimony that she did not use marijuana, **we nevertheless included a drug testing provision in the final** [**Custody O**]**rder**.

Trial Court Opinion, 1/9/24, at 5-6 (emphasis added; footnotes omitted).

We will not disturb the trial court's credibility determinations, as they are supported in the record. *See*, *e.g.*, *S.W.D.*, 96 A.3d at 400 (stating appellate courts must defer to findings of the trial court regarding credibility and the weight of the evidence that are supported by the evidence); *Andrews*, 601 A.2d at 353 (same). We discern no abuse of the trial court's discretion in denying Father's emergency petition; his third issue does not merit relief.

In his fourth and final issue, Father argues the trial court deprived him of due process by conducting the modification hearing "in an unfair manner and not following the rules of evidence." Father's Brief at 28. According to Father, the trial court improperly

- 30 -

repeatedly interrupt[ed] the witnesses and attorneys when they were attempting to answer questions or pose questions on critical issues, repeatedly stop[ped] the attorneys in the middle of them asking questions, [and did] not follow[] the rules of evidence by allowing exhibits to be properly authenticated and rushing the parties to conclude the [modification] hearing early.

*Id.* Father further claims that the trial court "did not allow [F]ather to develop a sufficient record to address all the custody factors[,]" due to the court's improper conduct of the modification hearing. *Id.*; *see also id.* at 29 (alleging the trial court failed to "take its responsibilities seriously and take the time to hear the case thoroughly").

Mother counters that Father's claim of a due process violation is belied by the record, where the trial court, at the modification hearing, "provided the parties with a full and fair opportunity to present their cases in accordance with the rules of evidence." Mother's Brief at 21 (unpaginated); *see also id.* ("The entire transcript reflects the active engagement of the parties" and that they both had "a full and fair opportunity to be heard and present evidence and cross examine witnesses to support their positions."). Mother further argues that the trial court properly

considered all 16 required custody factors required by 23 Pa.C.S.[A. §] 5328 on the record and weighed all factors in reaching its decision, even compl[i]menting the parties on how civilly and respectfully their testimony, and even text messages, were.

*Id.* at 22 (unpaginated) (citing N.T., 10/31/23, at 56).

The trial court rejected Father's due process claim in its Rule 1925(a) opinion, cogently reasoning as follows:

- 31 -

[Father's] most concerning allegation is that we deprived Father of due process by conducting the trial in an unfair manner by repeatedly interrupting the witnesses and attorneys. We concede that, pursuant to our standard procedure in custody trials, we took an active role in questioning the witnesses as well as guiding the attorneys and witnesses to stay focused on the issues at hand. We have thoroughly reviewed the transcript to see if Father's perception of unfairness is justified. **In every instance where we interjected, it was to clarify issues, prevent repetitive questions, or cut short nonresponsive answers.** As an illustration, there were numerous exhibits, including many pictures and voluminous text messages between the parties. We made it clear that specific questions about the exhibits were not necessary because we would review them. However, we also made clear that the parties could ask questions for clarification or explanation purposes. **No objections were made to how we conducted the proceeding.** The parties were given every opportunity to develop their issues and to be heard. We are satisfied that the transcript will show that both parties got a full and fair hearing.

Trial Court Opinion, 1/9/24, at 5-6 (emphasis added; footnotes and quotation marks omitted).

Our review discloses the trial court's foregoing reasoning is supported by the law and the record. *See id.* Furthermore, this Court has recognized,

[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. **Failure to timely object to a basic and fundamental error will result in waiver of that issue.** On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. … [O]ne must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) (emphasis added, citations omitted). Based on the foregoing, Father is not entitled to relief on his claim

of a due process violation. *See id.*; Trial Court Opinion, 1/9/24, at 5-6. Father's fourth issue merits no relief.

Finally, we address Mother's request for reasonable attorney's fees in connection with this appeal, as a sanction against Father.[15] Mother's Brief at 23 (unpaginated). Mother claims Father "was arbitrary, vexatious or [acting] in bad faith in filing" the appeal. *Id.* Mother invokes Section 2503(9) of the Judicial Code, which provides a participant may be entitled to an award of reasonable attorney's fees if "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.C.S.A. § 2503(9); *see also Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996) (defining "arbitrary," "vexatious" and "bad faith"); Mother's Brief at 22-23 (unpaginated).

Preliminarily, we recognize that a party may, for the first time on appeal, request an award attorney's fees under Section 2503 for an opposing party's sanctionable conduct. *See*, *e.g.*, *84 Lumber Co., L.P. v. Fish Hatchery, L.P.*, 934 A.2d 116, 120 (Pa. Super. 2007); *see also In re Nomination in re Doyle*, 304 A.3d 1091, 1105 (Pa. 2023). Moreover, pursuant to Pa.R.A.P. 2744, this Court may award reasonable attorney's fees if we "determine[] that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or

---

[15] Father's appellate brief does not address Mother's claim for attorney's fees. He also did not file a reply brief.

vexatious." Pa.R.A.P. 2744(1). Instantly, Mother invokes only Section 2503, not Rule 2744.

As a general rule, "parties to litigation are responsible for their own counsel fees and costs." **Werner v. Werner**, 149 A.3d 338, 346 (Pa. Super. 2016) (citation omitted). "[I]t is the burden of the party seeking counsel fees to prove the existence of one of the statutory conditions" of Section 2503. **Berg v. Georgetown Builders, Inc.**, 822 A.2d 810, 816 (Pa. Super. 2003). Our Supreme Court has instructed,

> [b]y imposing [] strict definitional guidelines, [Section 2503] serves not to punish all those who initiate legal actions which are not ultimately successful or which may seek to develop novel theories in the law. Such a rule would have an unnecessarily chilling effect on the right to bring suit for real legal harms suffered. Rather, [Section 2503] focuses attention on the conduct of the party from whom attorney's fees are sought and on the relative merits of that party's claims.

**Thunberg**, 682 A.2d at 300 (internal citations omitted).

Instantly, we disagree with Mother that Father's appeal is arbitrary, vexatious or taken in bad faith. As discussed above, Father presented two meritorious claims of trial court error. Although Father's remaining issues did not merit relief, they do not rise to the level of being "arbitrary, vexatious or in bad faith[,]" warranting relief under Section 2503(9). Mother has not met her burden of establishing her entitlement to an award of attorney's fees under Section 2503(9). **Berg**, 822 A.2d at 816.

Based on the foregoing, we reverse the trial court's Custody Order, in part, insofar as concerns the matter of funding Child's school/Harrisburg

Academy (*i.e.*, Paragraph 6), and remand for further proceedings consistent with this memorandum. In all other respects, we affirm.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/09/2024